Youssef H. Hammoud, esq. CA No. 321934
yh@lawhammoud.com
HAMMOUD LAW, PC
206 W. 4th St., 3rd Floor
Santa Ana, CA 92701
Telephone: (949) 301-9692

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| WILLIAM JONES,<br><br>  Plaintiff,<br><br>  v.<br><br>TRANSUNION RENTAL SCREENING SOLUTIONS, INC. and REALPAGE, INC. (a/k/a LEASINGDESK SCREENING),<br><br>  Defendants. | Civil Action No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, William Jones ("Plaintiff" or "Mr. Jones") brings this Complaint and Demand for Jury Trial ("Complaint") against Trans Union Rental Screening Solutions, Inc. ("TURSS") and RealPage, Inc. (a/k/a LeasingDesk Screening) ("RealPage"), together as "Defendants," alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq.

**JURISDICTION AND VENUE**

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681.

2. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

1

3. Defendants purposefully avail themselves of the protections of California law by regularly transacting business within the state and directing business at the state. Therefore, personal jurisdiction is established.

**PARTIES**

4. Plaintiff, William Jones, is a natural person who resides in Los Angeles, California, within the confines of Los Angeles County.

5. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

6. TURSS is a Delaware corporation doing business throughout the United States, including in the State of California. TURSS operates a principal place of business located at 5889 South Greenwood Plaza Boulevard, Suite 201, Greenwood Village, Colorado 80111. TURSS can be served through its registered agent, Corporation Service Company, located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

7. RealPage is a Delaware corporation doing business throughout the United States, including in the State of California. Through its subsidiary LeasingDesk Screening, RealPage operates a principal place of business at 2201 Lakeside Boulevard, Richardson, Texas 75082. RealPage may be served through its registered agent, C T Corporation System, located at 330 N. Brand Boulevard, Suite 700, Glendale, California 91203.

8. Among other things, Defendants sell consumer reports, often called background checks, tenant screening reports, and credit reports, to landlords and rental companies for their use in deciding whether to accept a potential tenant's rental application.

9. Defendants are "consumer reporting agencies" as defined by 15 U.S.C. § 1681a(f), because they "regularly engage [] in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing

consumer reports to third parties" in exchange for monetary compensation, by means of interstate commerce.

10. At all times relevant to this Complaint, Defendants acted through their agents, employees, officers, members directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

**FACTUAL ALLEGATIONS**

11. In or around June 2021, Plaintiff was offered a job opportunity located in Los Angeles, California.

12. Plaintiff believed the job offer was a once in a lifetime opportunity.

13. He immediately packed up his belongings and moved from Missouri to California.

14. Plaintiff did not have a chance to find an apartment before moving, so he rented a home through Airbnb.

15. Until Plaintiff could find an apartment, Plaintiff's family in Missouri agreed to take care of his now fourteen-year-old daughter that he has full custody of.

16. Plaintiff thereafter applied for numerous apartments, all of which required background checks.

17. Upon information and belief, TURSS provided those landlords and/or rental companies with a copy of Plaintiff's background report that included inaccurate and/or materially misleading information regarding Plaintiff's criminal and rental history.

18. As a result, Plaintiff was not approved for any of the apartments and rental homes.

19. After a month of no luck finding an apartment, the Airbnb owner asked Plaintiff if he would like to be roommates.

20. Plaintiff agreed, although the cost per month was a lot higher than he anticipated spending on a rental.

21. Plaintiff's fourteen-year-year-old daughter remained in Missouri with his family because Plaintiff did not feel comfortable having her live in an apartment with a man that she did not know.

22. In January 2022, Plaintiff began applying for more apartments and rental homes.

23. Upon information and belief, Defendants provided those landlords and/or rental companies with a copy of Plaintiff's background report that included inaccurate and/or materially misleading information regarding Plaintiff's criminal and rental history.

24. As a result, Plaintiff was denied rental opportunities.

**Facts Related to TURSS**

25. In or around June 2021, Plaintiff began applying for apartments and rental homes through Apartments.com.

26. Plaintiff applied for rentals on (1) Hart Street, (2) Coldwater Canyon Avenue, (3) West 91st Street, (4) Woodley Avenue, and (5) South Flower Street.

27. As a part of the application processes, Plaintiff consented to background checks.

28. Upon information and belief, TURSS provided the landlords and/or rental companies with copies of Plaintiff's TURSS background report.

29. Upon information and belief, the TURSS background report(s) provided to the rentals numbered 1 through 5 included the same inaccurate and/or materially misleading information provided to the rentals numbered 6 through 10 (discussed below).

30. Plaintiff was shocked to see the inaccurate and/or materially misleading information.

31. Plaintiff was unaware of how to resolve the problem at that time.

32. As a result of TURSS' inaccurate and/or materially misleading reporting, Plaintiff was not approved for any of the rentals numbered 1 through 5.

33. Plaintiff thereafter agreed to become roommates with the Airbnb owner, hoping the situation would only be temporary and that he would be reunited with his daughter shortly.

34. In or around January 2022, Plaintiff applied for additional homes through Apartments.com hoping to finally move his daughter to California.

35. Plaintiff applied for rentals on (6) South Cochran Avenue, (7) South Detroit Street, (8) Cloverdale South Avenue, (9) South Ogden Drive, and (10) 12th Avenue.

36. As a part of the application processes, Plaintiff consented to background checks.

37. Upon information and belief, the rentals numbered 6 through 10 were provided with copies of Plaintiff's TURSS background report.

38. On or about January 3, 2022, Plaintiff reviewed a copy of his TURSS background report through the Apartments.com online portal.

39. Plaintiff was disappointed to see various inaccurate information was still reporting on his TURSS background report.

40. Specifically, the TURSS background report indicated that Plaintiff had a criminal/traffic charge against him from February 25, 2020 in San Bernardino, California (case number MWV20003764).

41. Plaintiff was shocked as he did not move to California until June 2021.

42. For the six years prior to moving to California, Plaintiff lived in Missouri.

43. A cursory review of the public court records indicates that the person who was actually charged with case number MWV20003764 was named "William Tyrone Jones."

44. Plaintiff's middle name is "Jamal."

45. Upon information and belief, TURSS matched case number MWV20003764 with Plaintiff based solely on his first and last name.

46. The information indicating that Plaintiff had a criminal/traffic charge against him in San Bernardino, California is patently inaccurate.

47. In addition to the erroneous criminal record, TURSS also reported inaccurate and/or materially misleading information about Plaintiff's rental history on his TURSS background report(s).

48. In the "Eviction Related Proceedings" section of Plaintiff's TURSS background report, TURSS reported six cases.

49. All six cases were associated with Plaintiff's name, his former address on North Clifton, and the Greene Circuit Court in Missouri, in addition to indicating the following information:

A.  Case 1: "Record Type Missouri Evictions, Court File Number 1831AC04364, Action Type Vacated/Appeal…, Filing Date July 18, 2018, Release Date July 18, 2018, Amount N/A…"

B.  Case 2: "Record Type Missouri Evictions, Court File Number 1831AC08219, Action Type Civil Dismissal, Filing Date November 5, 2018, Release Date February 7, 2019, Amount N/A…"

C.  Case 3: "Record Type Missouri Evictions, Court File Number 1831AC08219, Action Type Civil New Filing, Filing Date, November 5, 2018, Release Date - -, Amount N/A…"

D. Case 4: "Record Type Missouri Evictions, Court File Number 1831AC04364, Action Type Civil New Filing, Filing Date, June 22, 2018, Release Date - -, Amount N/A…"

E. Case 5: "Record Type Missouri Evictions, Court File Number 1631AC04121, Action Type Civil Judgment, Filing Date July 29, 2016, Release Date - -, Amount $3,070…"

F. Case 6: "Record Type Missouri Evictions, Court File Number 1631AC04121, Action Type Civil New Filing, Filing Date July 1, 2016, Release Date - -, Amount N/A…"

50. A cursory review of the public court records for file number 1631AC04121 indicates that the judgment against Plaintiff was for $1,535.

51. The information indicating that Plaintiff has a judgment against him for $3,070 is patently inaccurate.

52. It is also unclear why TURSS reported three different case numbers twice each.

53. Plaintiff does not have six separate eviction actions or proceedings against him.

54. The information indicating that Plaintiff has six eviction actions or proceedings against him is patently inaccurate.

55. In the alternative, the information indicating that Plaintiff has six eviction actions or proceedings against him is materially misleading.

56. A cursory review of the public records indicates that there are only three eviction proceedings against Plaintiff.

57. File number 1631AC04121 indicates a judgment against Plaintiff for $1,535.

58. File number 1831AC04364 indicates the count for damages was dismissed.

59. File number 1831AC08219 indicates it was completely dismissed.

60. The three eviction proceedings also prove that Plaintiff was never "evicted" from the property and continued living there until 2019.

61. Therefore, the information indicating that Plaintiff was "evicted" in 2016 and 2018 is patently inaccurate and/or materially misleading

62. On or about January 9, 2022, Plaintiff disputed the inaccurate and/or materially misleading information on his TURSS background report(s) via email.

63. On or about January 9, 2022, TURSS emailed Plaintiff confirming receipt of his dispute.

64. On or about January 11, 2022, TURSS responded to Plaintiff's dispute of the eviction actions or proceedings.

65. In its dispute response, TURSS stated that "the disputed information was verified as accurate for case number(s): 1831AC04364, 1831AC08219 & 1631AC04121."

66. On or about January 13, 2022, TURSS responded to Plaintiff's dispute of the criminal/traffic charge.

67. In its dispute response, TURSS stated that "the dispute information was deleted for case number(s): MWV20003764."

68. On or about January 13, 2022, Plaintiff reviewed his TURSS background report via the Apartments.com online portal and observed that none of the six eviction cases were appearing on his TURSS background report(s).

69. Upon information and belief, TURSS removed the six eviction cases from Plaintiff's TURSS background report(s) despite responding to Plaintiff's dispute confirming the accuracy of the eviction cases.

70. However, the damage had already been done.

71. As a result of TURSS' inaccurately and/or materially misleading reporting, Plaintiff was not approved for any of the rentals numbered 6 through 10.

72. Upon information and belief, had TURSS not reported the criminal and/or not reported the eviction actions or proceedings in an inaccurate and/or materially misleading way, Plaintiff's chances of being approved for the rentals numbered 1-10 would have been greater.

**Facts Related to RealPage**

73. In or around January 2022, Plaintiff applied for an apartment at Park La Brea ("PLB").

74. Upon information and belief, PLB purchased Plaintiff's background report from RealPage.

75. Upon information and belief, RealPage provided PLB with a copy of Plaintiff's RealPage background report on or about January 16, 2022.

76. Upon review of his RealPage background report, Plaintiff was shocked to see various inaccurate information.

77. Specifically, the RealPage background report indicated that Plaintiff has a felony charge for "Possession of Controlled Substance Except 35 Grams or Less of Marijuana/Synthetic Cannabinoid" from Saline County (case number 20SACR00442).

78. Plaintiff was shocked as he has never been charged with nor convicted of possession.

79. A cursory review of the public court records indicates that the person actually charged with possession is named "William Joseph Jones" and lives or lived in New Century, Kansas.

80. Plaintiff's middle name is "Jamal."

81. Plaintiff has never lived in Kansas.

82. The information indicating that Plaintiff was charged with possession is patently inaccurate.

83. In addition to the erroneous criminal record, RealPage also reported inaccurate and/or materially misleading information about Plaintiff's rental history on his RealPage background report.

84. In the "Suits & Judgments for Eviction, Possession and/or Non-Payment of Rent Report" section of Plaintiff's RealPage background report, RealPage indicated Plaintiff had a judgment against him for $3,070 (case number 1631AC04121).

85. A cursory review of the public court records indicates that the judgment against Plaintiff was actually $1,535.

86. The information indicating that Plaintiff has a judgment against him for $3,070 is patently inaccurate.

87. The information is also materially misleading because Plaintiff was never "evicted" from the property and continued to live there until 2019.

88. On or about January 16, 2022, Plaintiff submitted a dispute to RealPage.

89. In his dispute, Plaintiff stated that the criminal record did not belong to him and that he was never evicted.

90. On or about January 16, 2022, RealPage emailed Plaintiff a dispute confirmation for the criminal record.

91. On or about January 16, 2022, RealPage emailed Plaintiff a separate dispute confirmation for the eviction.

92. On or about January 18, 2022, RealPage emailed Plaintiff a dispute response for the criminal record.

93. RealPage informed Plaintiff that its investigation "revealed that the disputed information is inaccurate, incomplete, or cannot be verified."

94. RealPage also removed the criminal record information from Plaintiff's background report.

95. On or about January 29, 2022, RealPage emailed Plaintiff a dispute response for the eviction.

96. RealPage informed Plaintiff that the investigation "confirmed that the disputed information is accurate."

97. RealPage also informed Plaintiff that the background report "accurately reflect[ed] the case status as publicly reported by the court."

98. On or about January 19, 2022, PLB emailed Plaintiff and denied his rental application.

99. PLB stated the reasoning was "Rental history unsatisfactory or insufficient."

100. As a result of RealPage's inaccurately and/or materially misleading reporting, Plaintiff was denied housing.

101. Upon information and belief, had RealPage not reported the criminal charges and/or not reported the eviction action or proceeding in an inaccurate and/or materially misleading way, Plaintiff's chances of being approved for the apartment would have been higher.

**Facts Related to All Defendants**

102. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

103. Upon information and belief, Defendants fail to maintain and employ reasonable procedures to assure maximum possible accuracy of the public records information they include in tenant screening reports.

104. Upon information and belief, Defendants knowingly and willfully maintain deficient procedures because reporting more information – even if it may be inaccurate and/or materially misleading – is more profitable than reporting less information.

105. For example, upon information and belief, Defendants allowed criminal charges to appear on Plaintiff's consumer reports without matching his full name, date of birth, social security number, driver's license number, or address.

106. In fact, Defendants failed to match anything with Plaintiff other than the first and last name.

107. In November 2021, the Consumer Financial Protection Bureau issued an advisory opinion to highlight that a consumer reporting agency that uses matching procedures that includes "name-only matching" is not using reasonable procedures to assure maximum possible accuracy.

108. Instead of employing reasonable procedures, as required by the FCRA, Defendants blindly collect information from unreliable third-party vendors to repackage and sell in their own tenant screening products.

109. Upon information and belief, Defendants buy consumer information from third-party vendors that do not have reasonable procedures in place to ensure that the information they sell is of maximum possible accuracy.

110. Defendants are aware that criminal information is often matched based on incomplete personal identifiers.

111. Defendants are also aware that public records information is often inaccurate or incomplete.

112. Upon information and belief, Defendants purchased Plaintiff's information from one or more third-party vendors that merely compile criminal data and public records information from various online sources without verifying its accuracy with actual court records.

113. Upon information and belief, none of Defendants' third-party vendors warrant the accuracy of the information they sell.

114. Upon information and belief, Defendants do not exercise due diligence in ensuring they are contracting with reliable third-party vendors.

115. Upon information and belief, Defendants do not conduct periodic quality assurance audits to ensure that they are receiving reliable consumer information from its third-party vendors.

116. Upon information and belief, Defendants do not independently investigate or evaluate the information they buy from third-party vendors.

117. Instead, Defendants have unreasonably decided that they are entitled to rely completely on third-party vendors to ensure the information included in their consumer reports is accurate.

118. Upon information and belief, Defendants have been sued under the FCRA by consumers in the past for reporting public records information in an inaccurate and/or materially misleading way on consumers' tenant screening reports.

119. Upon information and belief, Defendants have also been sued under the FCRA by consumers in the past for associating erroneous criminal records with rental applicants.

120. Therefore, Defendants have actual notice that their procedures often result in the preparation of inaccurate and/or materially misleading tenant screening reports and dissemination of inaccurate and/or materially misleading consumer information.

121. Defendants know that their services are used to make significant consumer decisions.

122. Upon information and belief, each of the Defendants knew or should have known that the information they provide to rental companies and landlords is used to determine whether a tenant's application is approved.

123. Upon information and belief, each of the Defendants knew or should have known that landlords and rental companies make decisions on tenants' applications based solely on the information contained in their reports.

124. Upon information and belief, each of the Defendants knew or should have known the negative impact an "eviction" or any record that resembles an eviction was likely to have on a potential tenant's rental application.

125. Upon information and belief, the Defendants purchase public records information from third party vendors.

126. Upon information and belief, those third-party vendors explicitly disclaim the accuracy of the information they provide to the Defendants.

127. Upon information and belief, the Defendants report and publish the information provided by the third-party vendors without verifying its accuracy.

128. Upon information and belief, the Defendants know or have reason to know that the third-party vendors they purchase consumers' information from often provide inaccurate, misleading, and incomplete records.

129. Upon information and belief, the Defendants report and publish unverified public records information without employing reasonable procedures to assure its accuracy because employing such procedures would cut into their profits.

130. At common law, Defendants' conduct would have given rise to causes of action based on defamation and invasion of privacy.

131. As a direct result of Defendants' inaccurate and/or materially misleading reporting, Plaintiff has suffered injuries that resulted in actual damages including, but not limited to: stress, wasted time, wasted money, rental denials, financial strain, sleepless nights, emotional distress, including mental anguish, frustration, humiliation, embarrassment, and other damages continuing in nature.

132. As a direct result of Defendants' conduct Plaintiff was denied numerous rental opportunities.

133. Plaintiff was forced to leave his daughter in Missouri for nearly six months.

134. This caused tension between Plaintiff and the family members taking care of his daughter.

135. As a direct result of Defendants' conduct, Plaintiff wasted time and money disputing, touring, and applying for apartments and rental homes.

136. As a direct result of Defendants' inaccurate and/or materially misleading reporting, Plaintiff was forced to rent from the Airbnb owner at a higher rate than he anticipated paying for an apartment.

137. Plaintiff has suffered from sleepless nights due to the stress, frustration, and worrying caused by Defendants' conduct.

138. After being diagnosed with high blood pressure, Plaintiff quit smoking cigarettes in August 2019.

139. As a direct result of the stress caused by Defendants' conduct, Plaintiff started smoking again.

140. As a direct result of Defendants' inaccurate and/or materially misleading reporting, Plaintiff has suffered from embarrassment and humiliation.

141. As of the filing of this Complaint, Plaintiff still has not been approved for an apartment or rental home.

## COUNT I
### Defendants' Violations of 15 U.S.C. § 1681e(b)

142. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

143. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it regulates all "consumer reports." 15 U.S.C. § 1681(a)(d).

144. In the parlance of the FCRA, tenant screening reports are "consumer reports."

145. The FCRA provides a number of protections for applicants who are subject to tenant screening and background reports.

146. The FCRA imposes duties on consumer reporting agencies, like the Defendants, to ensure that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

147. Under 15 U.S.C. § 1681e(b), "whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

148. The Defendants violated 15 U.S.C. § 1681e(b) by failing to **establish** reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports.

149. Alternatively, the Defendants violated 15 U.S.C. § 1681e(b) by failing to **follow** reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports.

150. Specifically, Defendants failed to establish, maintain, and/or follow procedures to prevent them from inaccurately reporting another consumer's criminal charges and convictions on Plaintiff's consumer reports.

151. The Defendants' deficient procedures also allowed them to inaccurately report a judgment against Plaintiff for twice the amount than it actually was.

152. In TURSS' case, it also reported six eviction actions or proceedings as opposed to three.

153. The Defendants' failures to employ and/or follow reasonable procedures while preparing and distributing Plaintiff's information caused Plaintiff to suffer statutory and actual damages, as described herein.

154. The Defendants' violations of the FCRA were willful and knowing.

155. Further, the Defendants' violations were committed in reckless disregard of Plaintiff's rights as a consumer.

156. Accordingly, the Defendants are individually liable for Plaintiff's statutory, actual, and punitive damages pursuant to 15 U.S.C. § 1681n.

157. Alternatively, the Defendants' violations of the FCRA were negligent, rendering them individually liable for Plaintiff's statutory and actual damages pursuant to 15 U.S.C. § 1681o.

158. In any event, the Defendants are individually liable for Plaintiff's reasonable attorney's fees and costs. 15 U.S.C. §§ 1681n, 1681o.

**COUNT II**
**RealPage's Violations of 15 U.S.C. § 1681i**

159. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

160. As detailed herein, RealPage reported the judgment against Plaintiff inaccurately.

161. Upon information and belief, RealPage's inaccurate and/or materially misleading reporting caused Plaintiff to lose out on rental opportunities.

162. On or about January 16, 2022, Plaintiff disputed RealPage's inaccurate and/or materially misleading reporting of the judgment.

163. Upon receiving Plaintiff's dispute, RealPage had an obligation to forward the dispute to the furnisher of the disputed information and conduct a reasonable investigation of the consumer's dispute. 15 U.S.C. §§1681i(a)(1)-(2).

164. A "reasonable investigation," requires, among other things, that the consumer reporting agency consider all relevant information when evaluating a consumer's dispute. 15 U.S.C. §1681i(a)(4).

165. If the investigation reveals that the disputed information is inaccurate, incomplete, or unverifiable, the consumer reporting agency is required to delete or modify the information at issue. 15 U.S.C. §1681i(a)(5).

166. Thereafter, the consumer reporting agency must forward the results of the investigation to any party who received the disputed information. 15 U.S.C. §1681i(a)(5).

167. Upon information and belief, RealPage violated 15 U.S.C. §1681i(a)(5) by failing to modify its reporting of the judgment against Plaintiff to report a judgment of $1,535, instead of $3,070.

168. Upon information and belief, RealPage violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable reinvestigation of the judgment upon receiving Plaintiff's dispute.

169. Upon information and belief, RealPage failed to consider all relevant information when investigating Plaintiff's dispute regarding the judgment. 15 U.S.C. §1681i(a)(4).

170. As a result of RealPage's inaccurate and/or materially misleading reporting, Plaintiff suffered actual damages, as detailed herein.

171. RealPage's violations of 15 U.S.C. §1681i were willful, rendering it individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. Additionally, Plaintiff is entitled to statutory damages, actual damages, and reasonable attorney's fees and costs. 15 U.S.C. §1681n.

172. In the alternative, RealPage's violations of 15 U.S.C. §1681i were negligent, rendering it individually liable for Plaintiff's statutory and actual damages pursuant to 15 U.S.C. §1681o. Accordingly, Plaintiff is entitled to recover actual damages, statutory damages, and reasonable attorney's fees and costs in an amount to be determined by the Court. 15 U.S.C. §1681o.

**TRIAL BY JURY**

173. Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, William Jones, respectfully requests judgment be entered against Defendants, for the following:

A. Actual damages pursuant to 15 U.S.C. §§ 1681n and 1681o;

B. Statutory damages pursuant to 15 U.S.C. §§ 1681n and 1681o;

C. Punitive damages pursuant to 15 U.S.C. § 1681n;

D. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o;

E. Any pre-judgment and post-judgment interest as may be allowed under the law; and

F. For such other and further relief as the Court may deem just and proper.

Dated: February 14, 2022

/s/ Youssef H. Hammoud
Youssef H. Hammoud, esq.
Hammoud Law, PC
206 W. 4th St., 3rd Floor
Santa Ana, CA 92701
T: (949) 301-9692
F: (949) 301-9693
E: yh@lawhammoud.com
*Attorney for Plaintiff*
William Jones